**BRENDAN McCARTHY**
Assistant U.S. Attorney
U.S. Attorney's Office
U.S. Courthouse
2601 2nd Avenue North, Ste. 3200
Billings, MT 59101
Phone:     (406) 657-6101
FAX:        (406) 657-6989
E-Mail:     Brendan.mccarthy@usdoj.gov

**ATTORNEYS FOR PLAINTIFF**
**UNITED STATES OF AMERICA**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MONTANA**
**BILLINGS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>Plaintiff,<br><br>vs.<br><br>**JUAN RAMON DELGADILLO-MEZA,**<br><br>Defendant. | **CR 16-12-BLG-SPW**<br><br>**UNITED STATES' SENTENCING RESPONSE** *in lieu of a* **SENTENCING MEMORANDUM** |

1

Plaintiff, United States of America, represented by Brendan McCarthy, Assistant U.S. Attorney for the District of Montana, hereby files a sentencing response in lieu of a sentencing memorandum. The government recommends a sentence of 210 months.

## FACTUAL SUMMARY

In mid-June of 2015, Agents with the Eastern Montana High Intensity Drug Trafficking Area Task Force and the Federal Bureau of Investigation's Big Sky Safe Streets Task Force began an investigation into a methamphetamine trafficking organization responsible for transporting methamphetamine from Washington into Belgrade and Billings, Montana for distribution. Agents identified Juan Ramon Delgadillo-Meza as one of the individuals who transports methamphetamine from Washington to Montana. The investigation also revealed that N.M. and E.D. were distributors in Montana.

On August 7, 2015, Agents conducted surveillance on Delgadillo-Meza and located him on the South Side of Billings. Delgadillo-Meza met with N.M. and others in the parking lot of a restaurant. During the meeting, N.M. and another individual got into Delgadillo-Meza's vehicle for approximately one minute. Before N.M. entered Delgadillo-Meza's vehicle, agents observed him with a thick

manila envelope in his hand. However, once he exited Delgadillo-Meza's vehicle, N.M. no longer had the envelope.

Between late October and early November, Agents developed additional information that Delgadillo-Meza and N.M. met in the parking lot of a convenience store in Columbus, Montana in the late evening hours of October 20, 2015.

On November 15, 2015, Agents learned that Delgadillo-Meza was traveling back to Billings. Agents conducted surveillance and spotted Delgadillo-Meza's vehicle near Butte. A Montana Highway Patrol officer stopped the vehicle for a traffic violation near Manhattan. When officers initiated the stop, the occupants were identified as Delgadillo-Meza and Bethany Fairchild. On November 6, 2015, the vehicle was searched pursuant to a warrant. The search revealed over three-quarters of an ounce (3/4) of suspected methamphetamine in various locations within the passenger compartment of the vehicle and two pounds of methamphetamine hidden in the front driver's side fender. The methamphetamine later field tested positive using a presumptive test kit.

A separate search warrant was obtained to search the data within the electronic devices. A search of Fairchild's phone showed that she accompanied

Delgadillo-Meza to Montana on the 10/20/15 and 11/5/15 trips, as well as other trips to Montana in October.

Agents also obtained call detail and cell site records for one of N.M.'s phones, and found that it left Billings on the afternoon of November 5, 2015 and went to Belgrade.   N.M. then made several phone calls to Delgadillo-Meza.

On the evening of November 1, 2015, agents were conducting surveillance on N.M. when they observed him meet another co-conspirator at a restaurant on the West End of Billings.   After leaving the restaurant, they walked to the co-conspirator's vehicle.   They then appeared to conduct two separate exchanges.

On January 6, 2016, agents executed search warrants at N.M.'s residence and stash location in Billings.   Agents seized approximately thirteen ounces of meth from a storage facility rented by N.M. in Billings.

N.M. also agreed to cooperate and speak with agents once he was arrested. N.M. stated that he first purchased ¼ to ½ a pound of meth from Delgadillo-Meza in Billings.   After the first deal, Meza would eventually return to Montana every ten days to two weeks and provide N.M. with two pounds of meth each time. N.M. stated that he was initially paying $12,500 for each pound of meth. However, on later trips, he was able to get the price down to $7,000 a pound.

N.M. initially worked with E.D. and they would both meet Delgadillo-Meza in Belgrade to pick up meth. E.D. owned a large shop in Belgrade and they would use it to store meth. But in the summer of 2014, N.M. and E.D. had a falling out and then Delgadillo-Meza would go directly to Billings to drop off the meth.

E.D. also cooperated and confirmed that during the course of the conspiracy Delgadillo-Meza would provide N.M. with two pounds of meth on each trip. E.D. said that the meth would either be transported to Belgrade or Billings. When it was in Belgrade, he would keep it at his shop. E.D. confirmed that N.M. would usually purchase the meth for approximately $12,000 per pound, but N.M. was able to substantially lower the price during the last trip they took in December of 2015.

## RECOMMENDATION

According to the PSR, the defendant's total offense level is 37 and his criminal history category is II, which results in a guideline range of 235 to 293 months imprisonment. The government has filed a separate motion that recommends a total offense level of 34 and an amended guideline range of 188 to 235 months.

Title 18 U.S.C. § 3553 states that the Court shall impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The statute further states that the Court shall consider: 1) the nature and circumstances of the offense and the history and characteristics of the defendant; and 2) the need for the sentence imposed to - a) reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; b) afford adequate deterrence to criminal conduct; c) protect the public from further crimes of the defendant; and d) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C. § 3553(a)(1)-(2). The Court must also consider the kind of sentences available, the sentencing guidelines and policy statements, any unwarranted sentencing disparities, and restitution to the victim.   18 U.S.C. § 3553(a)(3)-(7).

In this matter, the defendant was the leader or organizer for a drug trafficking organization that transported 60 to 99 pounds of methamphetamine from Washington to Montana and laundered approximately $1.3 million in U.S. Currency.   (PSR ¶ 22, 32).   Delgadillo-Meza is also citizen of Mexico and the PSR indicates that he entered the United States in his 20's by "walking across the California/Mexico border because his driver's license was expired."   (PSR ¶ 58).

6

All of Delgadillo-Meza's co-defendants have been sentenced. Noel Morris and Edward Donnes were the Montana-based distributors for Delgadillo-Meza's organization. Morris received a sentence of 151 months and Donnes received a sentence of 121 months. Bethany Fairchild accompanied Delgadillo-Meza on his trips to Montana as his "escort" and sometimes acted as his interpreter. (PSR ¶ 60). Fairchild received a sentence of 24 months.

The sentence in this matter must reflect the seriousness of the crime, promote a respect for the law, deter future criminal conduct and protect the public. The sentence must also take into account the nature and circumstances of the offense and history and characteristics of the defendant. As stated, the defendant was clearly the leader of this organization. He organized the trips to Montana, had contacts for the source of supply and exercised greater decision-making authority. (PSR ¶ 32). He is responsible for trafficking a substantial amount of methamphetamine into Montana during the course of the conspiracy and he made a substantial amount of money from his criminal activity. Since he was the leader, the defendant should ultimately be held more accountable than other members of the organization. A sentence in the middle of the guideline range of 210 months would be a sufficient, but not greater than necessary, sentence.

DATED this 22nd day of November 2017.

          KURT G. ALME
          United States Attorney


          */s/ Brendan McCarthy*
          BRENDAN McCARTHY
          Assistant U.S. Attorney

CERTIFICATE REGARDING COMPLIANCE

Pursuant to D. Mont. L.R. 7.1(d)(2) and CR 47.2, the attached Response to Defendant's Sentencing Memorandum is proportionately spaced, has a typeface of 14 points or more, and the body contains 1,226 words.

                          */s/ Brendan McCarthy*
                          BRENDAN McCARTHY
                          Assistant U.S. Attorney

CERTIFICATE OF SERVICE
L.R. 5.2(b)

\* \* \*

I hereby certify that on November 22, 2017 a copy of the foregoing document was served on the following persons by the following means:

| | |
|---|---|
| __1__ | CM/ECF |
| _____ | Hand Delivery |
| _____ | Mail |
| _____ | Overnight Delivery Service |
| _____ | Fax |
| __2__ | E-Mail |

1. Clerk, U.S. District Court

2. Steven C. Babcock
   Counsel for Juan Ramon Delgadillo-Meza

*/s/ Brendan McCarthy*
BRENDAN McCARTHY
Assistant U.S. Attorney